UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ABUNDANT FAITH CATHEDRAL,

Plaintiff,

v.

STATE AUTO PROPERTY AND
CASUALTY INSURANCE CO.,

Defendant.

_____/

Case No. 21-10304

U.S. DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 15] AND GRANTING DEFENDANT'S MOTION TO STRIKE [ECF NO.23]

### I. INTRODUCTION

Plaintiff Abundant Faith Cathedral ("AFC") commenced this lawsuit in the Wayne County Circuit Court. Defendant State Auto Property and Casualty Insurance Company ("State Auto") removed the lawsuit to this Court. [ECF No. 1]. The complaint alleges that State Auto breached its insurance contract by failing to cover certain repairs to AFC's church. [Id. at PageID.6]. Plaintiff seeks monetary relief for the church's repairs plus interest, pursuant to MICH. COMP. LAWS § 500.2006. [Id].

Presently before the Court are two of State Auto's motions: its Motion for Summary Judgment [ECF No. 15] and its Motion to Strike Plaintiff's

-1-

Supplemental Brief [ECF No. 23].  Both motions are fully briefed. Upon review of the parties' submissions, the Court concludes oral argument will not aid in the resolution of this matter. Accordingly, the Court will resolve the motions on the briefs. *See* E.D. Mich. L.R. 7.1(f)(2).

For the following reasons, the Court **GRANTS** both of State Auto's motions.

## II. FACTUAL BACKGROUND

AFC's church is located at 14710 Kercheval Street, Detroit, Michigan and led by Pastor Wallace.  [ECF No. 15-2, PageID.257].  At the time this lawsuit was filed, Pastor Wallace served as AFC's president and was responsible for maintenance and repairs to the church.  [*Id.* at PageID.258].

The two-story church was constructed in 1938, with a reinforced concrete structural frame and limestone paneling on its outer concrete walls.  [ECF No. 15-7, PageID.447].  The church's primary roof is a steel roof deck with a concrete topping slab, supported by steel beams.  [*Id*].  The roof covering is a single sheet of reinforced asphalt set in adhesive with reflective flakes.  [*Id*].

Plaintiff had work on its roof completed in 2018 by a company called Five Star Commercial Roofing, Inc.  [ECF No. 15-2, PageID.272].  Pastor Wallace sought a roofing company "to seal the roof" because it suffered from "a small

[water] leak" in the office bathroom and within the sanctuary.[1] [*Id.* at PageID.272–273]. Five Star performed work on unspecified "front" and "back" portions of the roof on October 31, 2017 and completed additional roof work on May 9, 2018. [ECF No. 15-9, PageID.537–538]. No other roofing companies worked on the church roof after Five Star. [ECF No. 15-2, PageID.278].

On December 30, and December 31, 2019, two storms hit Detroit, Michigan. [ECF No. 18, PageID.635–639]. Pastor Wallace was hospitalized while the storms passed. [ECF No. 15-2, PageID.287, 292]. Around January 10, 2020, he learned from church members Deacon Javon Brown and Deacon Jacob Landers that the storms had damaged the church. [Id]. Deacon Brown observed "the ceiling and the windows and the walls were wet" with water running down the walls onto the floor. [ECF No. 15-4, PageID.340]. On January 11, 2020, AFC filed a Proof of Loss claim with its insurer, State Auto. [ECF No. 1-3, PageID.13]; [ECF No. 15-5, PageID.357].

State Auto retained experts to assess the damage to AFC's property as part of its follow-up investigation. Engineering expert Derek Hibner inspected the church on February 16th and March 3rd of 2020. He observed: (1) "pressure applied by standing on the top surface of the roofing forced water out of open

---

[1] Deacon Landers stated in his deposition that "[s]omething was wrong with the roof" leaking water a couple years before Plaintiff filed a Proof of Loss claim. [ECF No. 15-3, PageID.316].

seams[;]" (2) "water beads, dampness to touch, and other evidence of saturated [concrete masonry units] indicating excessive water absorption within the masonry[;]" (3) "coping at the upper roof exhibit[ing] adhesive failure[;]" and (4) "a broken valve for a steam pipe" that "discharged steam into the mechanical room." [ECF No. 15-7, PageID.438–440].

Based on these observations among others, Mr. Hibner concluded that construction defects and poor roof maintenance caused the water leaks. [*Id.* at PageID.440]. Mr. Hibner also states "[t]he less than 2-year-old topmost roof overlay contains defects and allows water into the roof assembly." *Id.* These "defects" stem from "[t]he most recent roof covering (topmost layer of roof material) installed in mid-2018." being installed out of accordance with the law. *Id.* at PageID.441. As a result of the faulty roof work and interior conditions, Mr. Hibner opines that the water damage trickled downwards "for a considerable amount of time (months or years)." *Id.* The "unmaintained sealant in joints" on the roof also contributed to the water leaks, according to Mr. Hibner. *Id.* at PageID.440.

State Auto's other engineering expert, Bert Davis, made similar findings. Mr. Davis concurred with all of Mr. Hibner's findings and opinions and explicitly called out Five Star for its roofing installation that violated building codes. ECF No. 15-8, PageID.489. Mr. Davis added that the church's heating, ventilation, and

-4-

air conditioning ("HVAC") system "was not properly functioning" either, contributing to increased humidity and condensation "throughout the building." *Id.* at PageID.488. Plaintiff never deposed or otherwise challenged State Auto's experts' findings or opinions.

On December 4, 2020, State Auto sent Pastor Wallace a note titled "Coverage Explanation and Determination" that explained why it would not cover the reported loss. ECF No. 2-2, PageID.24. State Auto relied on its experts' reports and Plaintiff's admissions as the basis for denying coverage. *Id.* at PageID.24–25 ("[O]ur investigation has determined that the cause of the loss and damage to the building was not fortuitous, was repeatedly occurring over an extended period of time and was known or should have been known to [Plaintiff]"). Specifically, State Auto cited two exclusion provisions in its insurance policy supporting its coverage denial: (1) "Negligent work" on Five Star's behalf, and (2) "[w]ear and tear." *Id.* at PageID.26–27. Without any physical damage covered under the insurance policy, State Auto denied Plaintiff's insurance claim.

Plaintiff responded by filing its single-count Complaint on January 7, 2021, in Wayne County Circuit Court. ECF No. 1, PageID.5–7. Defendant removed the action to this Court. Discovery concluded on December 25, 2021. [ECF No. 13, PageID.213] and State Auto's Motion for Summary Judgment became fully briefed

on April 4, 2022. Two days later, Plaintiff filed a Supplemental Exhibit to Plaintiff's Response to Defendant's Motion for Summary Judgment [ECF No. 21]. It contained an unsworn affidavit of Peggy Pauley dated April 5, 2022. Ms. Pauley purports to have assisted AFC in the "presentation of its storm damage claim to . . . State Auto." [ECF No. 21, PageID.920].

Among other things, her affidavit states that: (1) Pastor Wallace told her that the water damage was not present prior to his hospitalization on December 28, 2019; (2) The water damage did not occur until after the wind, rain and ice storm of January 11, 2020; (3) The loss resulted when the wind-driven rain, snow and ice entered the building due to its pre-existing weaknesses in the roof and structure; and (4) she opined that "it is more likely than not that the wind driven rain, snow and ice caused the damage to the church for which Abundant Faith Cathedral is now seeking coverage pursuant to its policy of insurance with State Auto." [Id. at PageID.920].

The exhibit also included a news article about January 2020 storms in Wayne County, although the storms that allegedly caused the water damage to AFC occurred on December 30 and 31, 2019. State Auto filed a motion to strike Plaintiff's supplemental evidence on April 14, 2022.

The Court will discuss whether this exhibit should be stricken and whether there are genuine issues of fact that preclude summary judgment.

### III. DISCUSSION

### A. MOTION TO STRIKE

State Auto filed a motion to strike Plaintiff's supplemental exhibit. It argues that AFC violated local rule 7.1(g), Fed. R. Civ. P. 26 ("Rule 26"), and this Court's March 24, 2021, Scheduling Order. [ECF No. 23, PageID.943].

Plaintiff was originally required to disclose its lay witness list by September 7, 2021, and expert witness list by October 7, 2021. See [ECF No. 8]. On August 30, 2021, AFC responded to State Auto's discovery requests. It stated, "there are no expert witnesses with the exception of those individuals who will testify as to damages including but not limited to Peggy Pauley. . ." [ECF No. 23-1, PageID.957]. On September 8, 2021, AFC filed its witness list, which included Pauley but did not include an expert report authored by her. [ECF No. 11, PageID.205].

Parties have a duty to disclose the identities of individuals likely to have discoverable information that the disclosing party may use to support its claims; and they must do so within the time required by court order. Fed. R. Civ. P. 26(a)(1)(A)(i) & (a)(1)(C). In addition to the disclosures required by Rule 26(a)(1), a party must disclose the identity of any expert witness it may use at trial. Fed. R. Civ. P. 26 (a)(2)(A). If the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly

involve giving expert testimony, this disclosure must be accompanied by a written report. Id. at (a)(2)(B).

If the witness is not retained or specially employed to provide expert testimony in the case or not one whose duties as the party's employee regularly involve giving expert testimony, the witness is not required to provide a written report. However, the disclosure must state: (i) the subject matter on which the witness is expected to present expert testimony and (ii) a summary of the facts and opinions to which the witness is expected to testify. Id. at (a)(2)(C). A party must make these disclosures at the times and in the sequence that the court orders. Id. at (a)(2)(D).  Absent a stipulation or a court order, the disclosures must be made "at least 90 days before the date set for trial or for the case to be ready for trial." Id.

If a party fails to provide information or identify a witness as required by Rule 26(a), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. Fed. R. Civ. P. 37 (c)(1).

 AFC's witness list purports to offer Pauley's expert opinion on the issue of damages. However, AFC now appears to be offering Pauley's affidavit as evidence that the windstorm caused the water damage inside the church. [ECF No. 25, PageID.962].

AFC fails to show that the delay in disclosing Pauley as an expert is harmless or substantially justified. Although AFC says Pauley has been involved in this case since the beginning, the affidavit containing a summary of Pauley's opinion was not filed until April 6, 2022, long after the October 7, 2021 deadline to disclose expert witnesses and after the December 24, 2021 discovery cutoff date. [ECF No. 8].

AFC vaguely references the start of the COVID -19 pandemic and Plaintiff Counsel's COVID-19 illness in February 2022 as reasons for the delay. [ECF No. 25, PageID.961]. However, an expert report or a summary of the facts and opinions to which the Pauley was expected to testify was due no later than December 24, 2021, long before Plaintiff's Counsel became ill.

AFC offers no persuasive justification for the delay. It contends that State Auto was not prejudiced by the filing of the affidavit. [ECF No. 25, PageID.962]. AFC is incorrect, State Auto would face significant prejudice if the Court allowed Plaintiff to create an issue of fact at the summary judgment stage by relying on an affidavit that AFC never produced until after the motion for summary judgment was fully briefed and from a purported expert that Defendant had no opportunity to depose.

AFC also says that it would potentially suffer great harm if the affidavit were excluded. [ECF No. 25, PageID.962]. But even if the Court were inclined to accept Plaintiff's Counsel's purported justifications for the delay, the affidavit does not raise a genuine issue of fact.

The Court's summary judgment ruling may consider the entire record but need consider only the cited materials; AFC does not reference Pauley's opinion in its response. Fed. R. Civ. P. 56(c)(3); *see LidoChem, Inc. v. Stoller Enterprises, Inc.*, 500 F. App'x 373, 383 (6th Cir. 2012). Importantly, AFC develops no argument for how Pauley's opinion on the storm's causal link to the water damage inside the church shows that there is a genuine issue of material fact.

Further, the trial judge is the gatekeeper of expert evidence and only witnesses who are "qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an [expert] opinion." *Rose v. Truck Ctrs., Inc.,* 388 Fed.Appx. 528, 533 (6th Cir.2010) *(citing Johnson v. Manitowoc Boom Trucks, Inc.,* 484 F.3d 426, 429 (6th Cir.2007)); Fed. R. Evid. 702. AFC does not show that Pauley is qualified to give an opinion on the causation of the water leakage in the roof.  Without this showing, Pauley's expert opinion is not admissible. Fed. R. Evid. 702. An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to

testify on the matters stated. Fed. R. Civ. P. 56(c)(4); *see Ondo v. City of Cleveland*, 795 F.3d 597, 604 (6th Cir. 2015). Pauley's affidavit does not meet this standard and she may not testify as an expert on causation.

As such, State Auto's Motion to Strike [ECF No. 23] is **GRANTED**. The Court will not consider Pauley's affidavit in determining whether there is a genuine issue of fact.

## B. MOTION FOR SUMMARY JUDGMENT

### 1. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). No genuine dispute of material fact exists where the record "taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Ultimately, the court evaluates "whether the evidence presents a sufficient disagreement to require submission to a jury or

whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). To determine whether a genuine dispute of material fact exists, the Court "draw[s] all reasonable inferences and view[s] the evidence in the light most favorable to the [nonmovant]". *Henschel v. Clare Cty. Rd. Comm'n*, 737 F.3d 1017, 1022 (6th Cir. 2013).

"It is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment.*" Nat'l R.R. Passenger Corp. v. Old Republic Ins*. Co., No. CV 20-10177, 2021 WL 4901685, at *5 (E.D. Mich. Oct. 21, 2021) (quoting *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994)).

The Court will discuss whether the insurance contract entitles State Auto to dismissal on summary judgment grounds.

## 2. CONTRACT LAW

Because this Court sits in diversity, the substantive law of Michigan governs the case. *See Dakota Girls, LLC v. Philadelphia Indemnity Ins. Co.*, 17 F.4th 645, 648 (6th Cir. 2021). The traditional rules of contract interpretation apply to insurance contracts in Michigan. *See McGrath v. Allstate Ins. Co*., 290 Mich. App. 434, 439 (2010). Accordingly, courts look at the entire contract to give its terms

meaning. *Fresard v. Mich. Millers Mut. Ins. Co*., 414 Mich. 686, 327 N.W.2d 286, 289 (1982).

Michigan courts engage in a two-step process when determining coverage under an insurance policy: "(1) whether the general insuring agreements cover the loss and, if so, (2) whether an exclusion negates coverage." *K.V.G. Properties, Inc. v. Westfield Ins*. Co., 900 F.3d 818, 821 (6th Cir. 2018) (*citing Auto-Owners Ins. Co. v. Harrington*, 455 Mich. 377, 565 N.W.2d 839 (1997)).

"In interpreting a contract, it is a court's obligation to determine the intent of the parties by examining the language of the contract according to its plain and ordinary meaning." *In re Smith Trust*, 480 Mich. 19, 24-25 (2008). "If the contractual language is unambiguous, courts must interpret and enforce the contract as written, because an unambiguous contract reflects the parties' intent as a matter of law." *Hastings Mut. Ins. Co. v. Safety King, Inc*., 286 Mich.App. 287, 778 N.W.2d 275, 278 (2009)*.

The rules of contract interpretation apply to the interpretation of insurance contracts. *Citizens Ins. Co. v. Pro–Seal Serv. Group, Inc.*, 477 Mich. 75, 82 (2007). The language of insurance contracts should be read as a whole and must be construed to give effect to every word, clause, and phrase. *Klapp v. United Ins. Group Agency, Inc.*, 468 Mich. 459, 467 (2003). When the policy language is

clear, a court must enforce the specific language of the contract. *Heniser v. Frankenmuth Mut. Ins. Co*., 449 Mich. 155, 160 (1995).

In contrast, when a contract is ambiguous, its meaning becomes a question of fact with the factfinder trying to discern the parties' intent. *UAW–GM Human Res. Ctr. v. KSL Recreation Corp*., 228 Mich.App. 486, 579 N.W.2d 411, 414 (1998) (*quoting Raska v. Farm Bureau Ins. Co.,* 412 Mich. 355, 314 N.W.2d 440, 441 (1982)). Ambiguous terms include "contract provisions capable of conflicting interpretations." *Auto Club Ins. Ass'n v. DeLaGarza*, 433 Mich. 208, 444 N.W.2d 803, 805 (1989). If the contractual language is ambiguous, extrinsic evidence can be presented to determine the intent of the parties. *Id.* Once identified, ambiguous terms "are construed against its drafter and in favor of coverage." *Id.*

State Auto's motion claims that coverage is barred on two grounds: (1) the insurance policy's Negligent Work Exclusion precludes coverage; or alternatively, (2) the policy's Wear and Tear Exclusion applies. The Court addresses each argument below.

The Court addresses each argument below.

### 3. POLICY TERMS AND ANALYSIS

AFC does not dispute the negligent workmanship and wear and tear caused leaks in the roof. AFC believes that exceptions to those exclusions apply because,

although the roof has construction defects and wear and tear, the water damage was concurrently caused by the windstorm and windstorms are a covered "resulting loss" or "specified cause of loss" in the policy. [ECF No. 18, PageID.628].

Michigan's default anti-concurrent causation rule does not provide for coverage where loss was concurrently caused by a combination of a covered cause and excluded cause. *Iroquois on the Beach, Inc. v. Gen. Star Indem. Co*., 550 F.3d 585 (6th Cir. 2008). However, this rule applies only where the plain language of the policy is ambiguous or does not include a resulting loss clause. *Matthews v. Harleysville Ins. Co*., 826 F. App'x 508, 514, 516 (6th Cir. 2020). Neither party contends that the terms are ambiguous; so the language of the policy controls. As described below, the policy language surrounding both exclusions include "resulting loss" clauses, also known as "ensuing loss" clauses. *Id*.

The issue for the Court is whether AFC presents sufficient evidence of concurrent causation to raise a genuine issue of fact regarding the application of exceptions to the policy exclusions relied on by State Auto.

### A. Negligent Work Exclusion

Section B(3)(c) of the insurance policy provides the Negligent Work exclusion. It states:

> We will not pay for loss or damage caused by or resulting from any of the following: [c. [f]aulty, inadequate or defective: (1) Planning, zoning, development, surveying, sitting; (2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction; (3) Materials used in repair, construction, renovation or remodeling, or (4) Maintenance; of part or all of any property on or off" the church]. But if loss or damage by a Covered Cause of Loss results, we will pay for that resulting loss or damage.

[ECF No. 2-3, PageID.76]. Although it does not dispute Defendant's contention that negligent work caused the water leak, AFC says the water damage to the interior of the building resulted from a covered cause of loss: wind driven rain.

Section B(3)(a) states that:

> We will not pay for loss or damage caused by or resulting from any of the following: [(a) Weather conditions: But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in paragraph 1 above to produce the loss or damage].
>
> But if loss or damage by a Covered Cause of Loss results, we will pay for that resulting loss or damage.

[ECF No. 2-3, PageID.76]. Wind driven rain is a weather condition that is not excluded in paragraph 1. *See* section B(1)(a)-(g) at [ECF No. 2-3, PageID.75]. [2] Here, in the absence of language that signifies State Auto's intent exclude covered causes of loss that follow an excluded cause of loss, B(3)(a) and B(3)(c) combine to create an exception to the negligent work exclusion where negligent and wind

---

[2] See ECF No. 2-3, PageID.74-75 for a complete list of the exclusions in paragraph, none of them apply.

driven rain both result in water damage inside a building. But this is only true when the rain does not contribute to the damage with an event that is excluded in paragraph 1.

If State Auto intended to exclude loss resulting from both an excluded cause and a covered cause, it would have done so. This is confirmed in section B (1)— which applies to the exclusions listed in paragraph 1 (not at issue here)— it has anti-concurrent causation language: "We will not pay for loss or damage caused directly or indirectly by any of the following. . . Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss." [ECF No. 2-3, PageID.74]. Similar language is notably absent from the section that corresponds to the negligent work exclusion: section B (3).

State Auto contends that to be a "resulting loss," a peril must be the product a new, independent, non-foreseeable cause. They cite *TMW Enterprises, Inc. v. Fed. Ins. Co.*, 619 F.3d 574 (6th Cir. 2010) (applying Michigan law). In that case, plaintiff owned a building that was damaged by water due to faulty construction of its walls. *Id*. It filed an insurance claim that was denied due to faulty workmanship and wear and tear exclusions. *Id*. The policy had a "ensuing loss" provision; the exclusions did "not apply to ensuing loss or damage caused by or resulting from a peril not otherwise excluded." *Id*. Plaintiff argued that the intruding water

-17-

nonetheless amounted to a "peril not otherwise excluded" because the water caused some of the damage, and water-related damage is not otherwise specifically excluded—making it an "ensuing loss" and thus a covered loss. *Id*. The court rejected plaintiff's argument, reasoning that Michigan applies proximate cause principles in deciding whether a loss "resulted from" a particular event and that, because the "defective wall construction naturally and foreseeably leads to water infiltration, the language of the exclusion, not the exception to the exclusion, ought to apply." *Id*. at 579. (*citing Mich. Sugar Co. v. Emp'rs Mut. Liab. Ins. Co. of Wis*., 107 Mich. App. 9, 14, 308 N.W.2d 684 (1981)).

State Auto also cites *Matthews v. Harleysville Ins. Co*., 826 F. App'x 508 (6th Cir. 2020).  There, the insured sought coverage for water damage to the building's interior resulting from a poorly maintained roof.  Id. at 510.  This Court granted the insurer's motion for summary judgment.  *O.L. Matthews, M.D., P.C. v. Harleysville Ins. Co*., 412 F. Supp. 3d 717 (E.D. Mich. 2019) (Drain, J.).  The Sixth Circuit affirmed in part, finding the "ensuing-loss" provision was controlling instead of Michigan's default anti-concurrent causation rule. *Matthews*, 826 F. App'x at 514, 516. "In a situation where a covered cause and a non-covered cause both contribute to a loss, applying the anti-concurrent causation rule would preclude coverage every time, while an ensuing-loss clause would preserve coverage in some circumstances." *Id*. at 514.

Recognizing that the policy had an ensuing loss provision but still reading the policy in the context of its whole, the Sixth Circuit nonetheless held that the grant of summary judgment was proper. *Id*. The court reasoned that the exceptions to the negligent work and wear and tear exclusions required that a covered cause of loss lead to the excluded cause of lost, which resulted in water damage to the interior of the building. *Id*. at 516. That exception did not apply in *Mathews* because both causes of the damage to the roof "through which the rain ... enter[ed]"—negligent design of the drain and wear and tear to the roof itself— were excluded causes of loss under the policy. *Id*.

*Mathews* and *TMW* Enterprises are distinguishable. Unlike *Mathews*, the exception to the exclusion here does not require a covered cause of loss to occur before the excluded cause of loss. Further, one of the alleged causes of loss in this case—wind driven rain—is covered.

The exception in *TMW Enterprises* was different than the one at issue here, which does not use the terms "resulting from" or "caused by."  In cases with identical language pertaining to the exception, Michigan courts have held that coverage was not precluded. For example, In *Walters Beach Condo. Ass'n v. Home-Owners Ins. Co*., 2017 WL 5503789, at *3 (Mich. Ct. App. Nov. 16, 2017), the court interpreted a negligent work provision identical to the negligent work

exclusion at issue here.[3] Defective construction work allowed water penetration from a rainstorm causing significant damage. *Id*. The court reversed the grant of summary judgment, holding that the negligent work exclusion did not bar coverage when there was both defective workmanship and a covered cause of loss. *Id. See also Midtown Inv. Grp. v. Massachusetts Bay Ins*. Co., 2021 WL 3164274, at *3 (E.D. Mich. July 27, 2021) (rejecting defendant's argument that if a loss is the product of both defective workmanship and a separate cause of loss it is covered, the exclusion bars coverage).

Although wind driven rain may be a covered cause of loss that could defeat the application of the negligent work exclusion, AFC has produced no competent evidence showing that wind driven rain caused the water damage to the interior of the building.

Based on the opinions of Hibner and Davis, State Auto argues that Plaintiff's water damage resulted "from the long-term roof leaks caused by … defective construction, the lack of or faulty maintenance, and worn out, deteriorated and decayed roofing and building components."  [ECF No. 15, PageID.240]. Hibner concluded—based on his inspections of the church on February 18, 2020, and

---

[3] The provision stated, "We will not pay for loss or damage caused by or resulting from any of the following. But if loss or damage by a Covered Cause of Loss results, we will pay for that resulting loss or damage." Walters Beach, 2017 WL 5503789, at *3.

March 3, 2020—that negligent work caused water to "infiltrat[e] the roof assembly for a considerable amount of time (months or years)." [ECF No. 15-7, PageID.441]. Dr. Davis, State Auto's engineering expert, concluded that all of the water damage in AFC's building, old and new, would have been prevented had AFC maintained the premises and the roofing contractor not improperly done its work. [ECF No. 15, PageID.250].

AFC argues that "the water came from the wind-driven rain during the storm of December 30, 2019 and December 31, 2019. There was no water running down the walls and staircase and ceilings before the storm." [ECF No. 19, PageID.629]. They believe "a question of fact exists as to whether the water was a result of the wind-driven rain; both a covered cause of loss and a specified cause of loss." [Id].

None of AFC's witnesses can establish that the water damage did not occur until after the storm. To support its position, AFC relies on weather reports describing the wind and rain during the storm. [ECF No. 18, PageID.285]. AFC also relies on the testimony of Deacon Brown, Deacon Landers, and Pastor Wallace.

Brown testified that he saw the water leaking through the ceiling in the upstairs area and did not see leaks in any other area of the building. [Id]. Deacon Landers testified that he had never seen water or repairs to those areas prior to Pastor Wallace's hospitalization on December 28, 2019. [ECF No. 18,

PageID.878]. Pastor Wallace appeared to testify that he saw the leaks happen after the storm:

> Q. Were there any roof leaks in that area, in that very lowest roof over the door?
>
> A. No. But we saw since that storm, things -- we saw some things happen since the storm. There's some things that now you can see since the storm.

[ECF No. 18, PageID.758].

Neither the evidence of severe storms nor the above testimonies are sufficient to raise a genuine issue of fact regarding the cause of the water damage. The statements of Pastor Wallace, Deacon Lander and Deacon Brown do not refute Hibner's and Davis's conclusions that excluded causes were the but for causes of the water damage inside the building and that water had been leaking through the roof for months or years before his inspection, which occurred shortly after the storm.

Viewing the evidence in the light most favorable to the Plaintiff, AFC produces no admissible evidence to raise an issue of fact regarding the causation of the water damage. It fails to show that an exception to the negligent work exclusion applies.

-22-

Because the negligent work exclusion applies, there will be no coverage for the water damage, regardless of whether the wear and tear exclusion applies. *See Michigan Battery Equip, Inc. v. Emcasco Ins. Co.*, 317 Mich. App. 282, 285; 892 N.W.2d 456 (2016) ("[C]overage under a policy is lost if any exclusion within the policy applies to an insured's particular claims."). For these reasons, the Court will not discuss the wear and tear exclusion.

## 4.  CONCLUSION

For the reasons discussed herein, the Court **GRANTS** State Auto's Motion for Summary Judgment [ECF No.15] and its Motion to Strike Plaintiff's Improper and Untimely Summary Judgment Supplemental Exhibit [ECF No. 23].

SO ORDERED.

Dated:  November 30, 2022                    /s/Gershwin A. Drain____
                                             GERSHWIN A. DRAIN
                                             United States District Judge

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
November 30, 2022, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager